UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **THOMAS SINGERMAN** | **CASE NO. 6:19-CV-00952** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **PBC MANAGEMENT INC., ET AL.** | **MAG. JUDGE CAROL B. WHITEHURST** |

## RULING

Before the Court is a Motion for Partial Summary Judgment filed by Defendants, PBC Management, LLC ("PBC") and FMT Industries, LLC ("Florida Marine"). [ECF No. 51]. Pursuant to the motion, Defendants seek dismissal of Plaintiff Thomas Singerman's claim for "additional cure benefits, punitive damages and compensatory damages for any alleged arbitrary and capricious failure to pay cure." *Id.* Plaintiff opposes the motion. [ECF No. 67]. For the reasons that follow, the motion is DENIED.

## I.
### BACKGROUND

This is a suit by Jones Act seaman Thomas Singerman for personal injuries sustained in a workplace accident on July 23, 2016. On that date, Singerman, an employee of PBC, was working as an engineer aboard the M/V CAPT. W.D. NUNLEY when he was ordered to the bow of the vessel to work the headline during a breasting operation.[1] [ECF No. 9 at 2; ECF No. 51-1 at 5]. As Singerman was removing the headline from the H-bit, "the headline came under extreme tension and violently snapped his left radius." [ECF No. 1 at 4, ¶ 10]. Shortly thereafter Singerman had surgery with Dr. Paul van Deventer in Covington, Louisiana "for a reduction and internal fixation

---

[1] The vessel was owned by Florida Marine. [ECF No. 9 at 2 n.1].

of a comminuted displaced fracture of the left radius, with placement of a six-hole plate and screws." *Id.* at 6, ¶ 13; *see also* ECF No. 51-1 at 6]. "[H]owever, as the left radius healed, it became shorter and Singerman was left with pain and weakness of his wrist and almost total numbness of the left ring and long fingers." *Id.* Accordingly, on July 7, 2018, Singerman had a second surgery by Dr. Darrell L. Henderson of Lafayette, Louisiana for "(1) left wrist arthroscopy with a debridement of triangular fibrocartilage complex; (2) external neurolysis with anterior transposition, ulnar nerve, left elbow; (3) microscopic internal neurolysis of ulnar nerve at elbow; (4) use of synthetic nerve wrap at elbow; (5) decompression of left ulnar nerve at wrist; (6) decompression of left median nerve at wrist; (7) left ulnar osteotomy and shortening with application of Rayhack compression plate, and (8) application of external bone growth stimulator." *Id.* "[T]en months later, on May 30, 2019, Singerman was again taken to surgery by Dr. Henderson for (1) development of volar flap and dorsal flap, left forearm; (2) removal of radial plate and six screws; (3) removal of the ulnar plate and seven (7) screws, placed in an earlier surgical procedure; (4) an extensor tenolysis; and (5) flexor tenolysis. . . ." *Id.*

Defendants contend Florida Marine entered into a contract whereby Dr. Henderson agreed to accept payment for Singerman's treatment in accordance with the rates provided in the Louisiana Workers' Compensation Fee Schedules." [ECF No. 51-1 at 6-7]. According to Defendants, Dr. Henderson eventually began "demanding payment for his services under some arbitrarily selected national fee schedule," but Florida Marine continued paying him the rates set forth in the Louisiana Workers' Compensation fee schedules.[2] *Id.* at 7. Defendants assert Singerman now claims he is owed an additional $23,127.55, which represents the amounts charged

---

[2] According to Defendants, they continued paying Louisiana Workers' Compensation rates to Dr. Henderson until November 19, 2019, when Singerman reached maximum medial improvement. [ECF No. 51-1 at 7-8].

by Dr. Henderson in excess of the Workers' Compensation rates. *Id.* at 8. Accordingly, Defendants seek dismissal of Singerman's remaining claim for cure, arguing Singerman "cannot meet his burden of proof to establish that he is owed additional medical expenses" because Florida Marine paid Singerman's medical expenses "at a reasonable and customary rate." *Id.* at 4. Alternatively, Defendants contend this claim should be dismissed because Florida Marine has "satisfied its contractual obligation to Dr. Henderson with the payment for his medical services in accordance with the Louisiana Workers' Compensation fee schedule." *Id.* at 13-14. For similar reasons, Defendants additionally seek dismissal of Plaintiff's claim for compensatory and punitive damages arising out of Defendant's cure obligation. *Id.* at 14-15.

## II.
### STANDARD OF REVIEW

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010). As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.

*Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted). When reviewing a motion for summary judgment, "the court must disregard all evidence favorable

to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 373 (5th Cir. 2001).

## III.
### APPLICABLE LAW & ANALYSIS

When a seaman "becomes ill or suffers an injury while in the service of a vessel," his Jones Act employer owes him an absolute, non-delegable duty to pay a per diem living allowance for food and lodging (*i.e.*, "maintenance") and to pay for the seaman's "medical, therapeutic, and hospital expenses" (*i.e.*, "cure"). *In re 4-K Marine, L.L.C.*, 914 F.3d 934, 937 (5th Cir. 2019). The cure obligation extends until the seaman reaches maximum medical improvement.[3] *Vaughn v. Atkinson*, 369 U.S. 527, 531 (1962). As a general rule, "a seaman has a duty to mitigate the costs of cure." *Caulfield v. AC & D Marine, Inc.*, 633 F.2d 1129, 1133 (5th Cir. 1981). Thus, if a seaman rejects a qualified physician or medical facility designated by the employer, he shall "receive no more compensation than would have been necessary had he acquiesced in defendant's program." *Id.* at 1134 (quoting *Oswalt v. Williamson Towing Co.*, 488 F.2d 51, 55 (5th Cir. 1974)); *see also Rodriguez Alvarez v. Bahama Cruise Line, Inc.*, 898 F.2d 312, 315 (2d Cir.1990). Stated differently, "if a seaman merely seeks his own private physician rather than another chosen by the employer he forfeits only that amount of compensation, if any, that would have been saved if he had received the necessary care from the employer's doctor. . . ." *Id.* The employer bears the burden of showing "that the doctor chosen by the employee provided unnecessary treatment or that his

---

[3] While maintenance and cure is "the particular responsibility of the employer," due to "the peculiar relationship existing between the seaman and his vessel," seamen may sue the vessel owner in rem to recover maintenance and cure. *Baker v. Raymond Int'l, Inc.*, 656 F.2d 173, 185 (5th Cir.1981) (quoting *Solet v. M/V Capt. H.V. Dufrene*, 303 F.Supp. 980, 987 (E.D.La. 1969)).

fees were higher than those the employer's physician would have charged for the same services." *Id.* at 1135.

When an employer receives a claim for maintenance and cure, it is entitled "to investigate and require corroboration of the claim before making payments." *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir. 1987), *abrogated on other grounds by Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496 (5th Cir. 1995), *abrogated by Atlantic Sounding, Inc. v. Townsend*, 557 U.S. 404 (2009). However, if after investigating the claim the employer unreasonably rejects it, the employer becomes liable not only for maintenance and cure but also for any compensatory damages caused by the unreasonable failure to pay maintenance and cure. *Garijak* at 1358; *see also In re 4-K Marine* at 938. Further, if the employer's failure to pay maintenance and cure was not only unreasonable but was also willful and wanton, the employer becomes liable for punitive damages and attorney's fees. *Garijak* at 1358; *In re 4-K Marine* at 938. This higher degree of fault has been described as "callous and recalcitrant, arbitrary and capricious, or willful, callous and persistent." *Garijak* at 1358; *see also MNM Boats, Inc. v. Johnson*, 248 F.3d 1139 (5th Cir. 2001).

**A.      Whether summary judgment is warranted with regard to Plaintiff's claim for cure.**

In this matter, Defendants have not shown that they tendered any specific physician to Singerman for any of his three surgeries. Rather, they merely state that Singerman saw Dr. van Deventer for his first surgery, and then saw Dr. Henderson (who Defendants characterize as "more expensive") for his second and third surgeries. [ECF No. 51-1 at 9-10; *see also* ECF No. 51-3 at 6-7]. Assuming Defendants did designate Dr. van Deventer for Plaintiff's care, they have not shown by competent summary judgment evidence that Dr. van Deventer would have charged less

than Dr. Henderson for the same procedures.[4] Conversely, assuming Defendants did not designate Dr. van Devanter for Singerman's care, they have provided no evidence supporting their position that the amounts set forth in the Louisiana Workers' Compensation fee schedule constitute the "reasonable and customary charges" by medical providers for Jones Act seamen. Thus, whether such payments constitute "reasonable and customary charges" is a question for the trier of fact. Finally, the Court is unpersuaded by Defendants' argument that Florida Marine owes no additional amounts for Singerman's cure because Dr. Henderson was in breach of a purported contract entered into by Florida Marine and Plastic Surgery Associates. Assuming without deciding that there was a perfected contract and a breach thereof, Defendants' remedy is not found by recouping their loss from Singerman—their remedy is found by bringing suit against Dr. Henderson for breach of contract. For these reasons, the Court finds Defendants have failed to carry their burden of demonstrating that there are no issues of material fact with regard to Singerman's claim for cure.

**B.      Whether summary judgment is warranted on Plaintiff's claim for compensatory and punitive damages.**

Singerman asserts that Florida Marine "has acted unreasonably and with wilful [sic] and wanton disregard of Singerman's right under the general maritime law to receive proper cure." [ECF No. 1 at 8, ¶ 18]. According to the Complaint, Florida Marine received notice on March 19, 2018 that Singerman needed a second surgery for his injuries, "and even though Florida Marine did not dispute Singerman's need for the proposed medical treatment, it failed and refused, for almost four (4) months to provide the necessary authorization and financial assurances to the

---

[4] While Defendants assume Dr. van Devanter would have charged less than Dr. Henderson for Singermann's second and third surgeries, they have provided no evidence in support of this argument, and Defendants will bear the burden of proof on this issue at trial. *Caulfield*, 633 F.2d 1135.

healthcare providers . . . ." *Id.* at 8-9. Singerman further notes Florida Marine has not paid all of the medical expenses for his treatment—*i.e.*, the amount in excess of the Louisiana Workers' Compensation fee schedules. *Id.* at 9. In light of the foregoing allegations, Singerman states he has had to hire an attorney in order to assist him in asserting his right to cure, and he is therefore "entitled to have punitive damages assessed against Florida Marine, as well as an award of attorney's fees." *Id.* For the reasons previously discussed, Defendants contend that at all times Florida Marine "acted reasonably in its payment of its cure obligation" and therefore its conduct cannot be deemed "arbitrary and capricious." [ECF No. 51-1 at 14, 15]. Considering the unresolved material facts set forth in Section III (A), *supra*, as well as the legal ramifications of these facts, summary judgment on Singerman's claim for compensatory and punitive damages for his employers' alleged willful failure to pay cure is inappropriate at this time.

## IV.
### CONCLUSION

For the reasons set forth above, the Motion for Partial Summary Judgment filed by Defendants PBC Management, LLC and FMT Industries, LLC [ECF No. 51] is DENIED.

THUS DONE in Chambers on this 20th day of July, 2021.

ROBERT R. SUMMERHAYS<br>UNITED STATES DISTRICT JUDGE